**Daniel H. HENNIGAN, Appellant,**

v.

**HEIGHTS SAVINGS ASSOCIATION, Appellee.**

**No. 17256.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 21, 1978.

Rehearing Denied Jan. 18, 1979.

Fred L. Fraser, Houston, for appellant.

Bracewell & Patterson, Michael A. Pohl, Houston, for appellee.

COLEMAN, Chief Justice.

This is an appeal from a summary judgment in favor of Heights Savings Association in a suit to recover the balance due on a promissory note after allowing as a credit on the note the amount realized at a Deed of Trust sale. Daniel H. Hennigan, who assumed the note secured by the Deed of Trust, appeals from the judgment asserting that he was entitled to an offset for damages under the Texas Deceptive Trade Practices Act-Consumer Protection Act and the Federal Truth In Lending Act. The judgment will be affirmed.

Daniel H. Hennigan, an attorney, purchased a house on September 26, 1972. As part of the purchase transaction, Mr. Hennigan assumed a preexisting promissory note executed by Jeffery O. McCollum, which was secured by a Deed of Trust. The Deed of Trust provided for an acceleration of the indebtedness in the case of an assumption sale unless Heights Savings Association should give its written approval of such sale. This approval was forthcoming and Hennigan began making the payments due under the note. He subsequently defaulted, and by letter dated January 12, 1976, Heights accelerated the note and declared all unpaid principal and interest to be due and payable. Thereafter the property securing the note was sold under the McCollum Deed of Trust and the proceeds of the sale were credited to the note. This suit for the balance due was then instituted.

The appellant first asserts that the trial court erred in rendering a summary judgment since the judgment denied him relief by way of setoff damages authorized by Section 17.50(b) of the Texas Deceptive Trade Practices Act (TDTPA). The TDTPA became effective on May 21, 1973. The Hennigan loan was consummated on September 26, 1972, eight months prior to the effective date of the TDTPA. Appellant contends, however, that his cause of action accrued on August 30, 1974, the date on which Heights for the first time demanded that Hennigan procure extended coverage insurance on the premises in addition to fire insurance previously required. Appellants rely on the holding of the Supreme Court of Texas in *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977), that the date of the acts which give rise to a cause of action under the Consumer Protection Act, rather than the date of the sale, determines the applicability of the Act.

Section 17.50(a)(1) and (3), provide that a consumer may maintain an action if he has been adversely affected by the use or employment by any person of an act or practice declared to be unlawful by Section 17.-46 of this chapter or by any unconscionable action or course of action by any person. Section 17.46, supra, provides that false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful. A number of acts which would constitute false, misleading, or deceptive acts or practices are listed in Section 17.46, none of which are similar to the actions complained of in this case.

Hennigan acquired the property in question from McCollum by a Warranty Deed containing a clause by which he specifically assumed the indebtedness of McCollum to Heights. By this transfer, Hennigan occupies the same relation to the mortgaged property as McCollum, and is bound by all the terms and conditions of the instruments executed by McCollum in connection with the purchase. *City of Houston v. State*, 171 S.W.2d 200 (Tex.Civ.App.— Dallas 1943, writ ref'd w. o. m.). The note which Mr. Hennigan assumed provided that the failure to place and keep fire and windstorm insurance upon the improvements in their full insurable value, or in the amount of the indebtedness, in some insurance company satisfactory to the holder of the note, loss payable to the holder of the note, shall cause the note to immediately become due and payable. In the Deed of Trust securing the note the grantor agreed to insure and keep insured all improvements upon said property against loss or damage by fire and

windstorm, "and any other hazards as may be reasonably required from time to time by the beneficiary during the term of the indebtedness secured". In the event the mortgagor failed or refused to furnish Heights the insurance required, the Deed of Trust authorized Heights to purchase the insurance and charge the cost thereof to the mortgagor. Some months after Hennigan acquired the property, Heights informed him that they would require extended coverage and offered to assist him in securing such coverage.

■ On the refusal of Mr. Hennigan to purchase extended coverage insurance, which includes windstorm, hurricane, hail, explosion, riot, civil commotions, smoke, aircraft, and land vehicles coverage, Heights procured such insurance and charged the premium for same to Mr. Hennigan. An exhibit in evidence reflects that the cost for the year 1974–1975 for the extended coverage was the sum of $68.00. Heights' demand that Hennigan furnish insurance as authorized by the Deed of Trust did not constitute a false, misleading, or deceptive act nor did it constitute an unconscionable action or course of action.

■ In determining what constitutes a false, misleading, or deceptive act or practice in the conduct of trade or commerce we are referred to the interpretations given by the Federal Trade Commission and the Federal Courts to Section 5(a)(1) of The Federal Trade Commission Act [15 U.S.C.A. 45(a)(1)]. See Section 17.46(c), supra. Based on this provision of the Act, Hennigan contends that any violation of the Federal Truth in Lending Act could constitute a violation of the Deceptive Trade Practices Act by being "bootstrapped" through the Federal Trade Commission Act. The Federal Truth in Lending Act requires that all "charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property . . . shall be included in the finance charge" under certain conditions. 15 U.S.C.A. Section 1605(c). If the premiums for property insurance written in connection with a loan are not included in the finance charge, this section requires the creditor to provide a clear and specific statement in writing setting forth the cost of the insurance "if obtained from or through the creditor". This section refers to matters to be included in the Regulation Z Disclosure Statement which must be furnished to the borrower by the financial institution prior to the completion of the transaction. Since at the time this transaction was completed the TDTPA was not in effect, the failure to make such disclosure could not give rise to a cause of action under the state law even by "bootstrapping." *Stevens v. Rock Springs Natl. Bank,* 497 F.2d 307 (10th Cir. 1974).

Hennigan has also alleged a cause of action under the Federal Truth In Lending Act. He complains that Heights did not on or before the subject transaction was consummated provide "a clear and specific statement in writing setting forth the cost of the insurance". The Regulation Z disclosure, which Hennigan admits he received, provided that property insurance "if written in connection with this loan will not be furnished by the association but may be obtained by you through any person of your choice, . . . ." The cost of the insurance was not disclosed in this instrument.

No insurance was written in connection with this "consumer transaction", and the record does not reflect that a policy of insurance was obtained from or through Heights Savings at the time of or in connection with the extension of credit to Hennigan.

■ The Truth In Lending regulations issued by the Board of Governors of the Federal Reserve System pursuant to the Truth In Lending Act implement that Act. The purpose of the Act is to assure that every customer who has need for consumer credit is given meaningful information with respect to the cost of that credit. Other relevant credit information must also be disclosed so that the customer may readily compare the various credit terms available to him from different sources. 12 CFR Section 226.1(a)(2). One of the principal items required to be disclosed is the cost of

required insurance. In the case of a loan secured by a first lien on a dwelling the cost of insurance is not required to be included in the finance charge (12 CFR Section 226.-8), but the cost of premiums for the term of the "initial policy or policies written in connection with the transaction, accompanied by a statement of the type of insurance and the term thereof" must be stated. 12 CFR Section 226.402. If the purchaser elects to purchase insurance otherwise than from or through the creditor, the creditor is not required to disclose the cost of the insurance or include the premium in the finance charge. 12 CFR 226.405(b).

█ In this summary judgment proceeding the burden is upon Hennigan to introduce summary judgment evidence to support his cause of action under the Truth In Lending Act in order to develop his affirmative defense of "offset". There is no evidence that Hennigan purchased the policy of insurance in force at the time he assumed the loan from or through Heights Savings Association. The cost of the insurance was not financed by Heights. Since Heights included on the disclosure statement furnished to Hennigan, prior to the extension of credit to him, a statement informing him that he could choose the person through whom the insurance was to be obtained, there is no summary judgment evidence to support a cause of action under the Truth In Lending regulations. 12 CFR Section 226.4(a)(6).

A cause of action under the Truth in Lending Act is purely a creature of statute. The Act provides that the action may be brought in any court of competent jurisdiction "within one year from the date of the occurrence of the violation". 15 U.S.C. Section 1640(e). Approximately five years and seven months elapsed between the time of the alleged violation and the filing of the amended answer asserting a setoff by reason of the Truth in Lending Act. The statutory cause of action had ceased to exist before it was asserted. *Fenton v. Citizen Savings Association,* 400 F.Supp. 874, 879 (C.D.Mo.1975); *Lincoln First Bank v. Sielawa,* 398 N.Y.S.2d 654 (N.Y.City Ct.1977).

Hennigan asserts that he pled recoupment which constitutes a defense even though the same claim asserted as an independent cause of action would be barred by limitations. In support of this contention he cites *Garza v. Allied Finance Co.,* 566 S.W.2d 57 (Tex.Civ.App.—Corpus Christi 1978, no writ hist.).

█ The rule in this state is that where the subject matter of a defense interposed by the defendant constitutes an independent cause of action which does not go to the foundation of the plaintiff's demand, it cannot effect a reduction of the amount of the plaintiff's recovery except by way of setoff, and the statutes of limitation are available to the plaintiff in respect to such a defense. On the other hand, if the subject matter of the defense be of an intrinsically defensive nature, which, if given effect, will operate immediately as a negation of the plaintiff's asserted right to recover, or in abatement, either wholly or partially, of the amount claimed, the statute of limitation does not apply. *Morris-Buick Co. v. Davis,* 127 Tex. 41, 91 S.W.2d 313 (1936). Henningan's asserted causes of action under the Truth In Lending Act constitute an independent cause of action which does not go to the foundation of the plaintiff's demand, and cannot effect a reduction of the amount of the plaintiff's recovery except by way of setoff. The cause of action is barred by the applicable statute of limitations. *Morris-Buick Co. v. Davis,* supra.

The judgment is affirmed.

PEDEN and DOYLE, JJ., join in this opinion.