Linda M. CALLAWAY,
Appellant-Appellee,

v.

EAST TEXAS GOVERNMENT CREDIT
UNION, Appellee-Appellant.

No. 1445.

Court of Civil Appeals of Texas,
Tyler.

May 28, 1981.

Appellant's Motion for Rehearing Granted
with Opinion June 26, 1981.

Appellee's Rehearing Denied
June 26, 1981.

M. Gaddy Wells, Parsons, Thorn & Wells, Palestine, for appellant-appellee.

Daniel F. Dean, Palestine, for appellee-appellant.

McKAY, Justice.

This is an appeal from the trial court's take-nothing judgment on a counterclaim for wrongful issuance of a writ of sequestration (writ) and a cross-appeal from its judgment granting relief under the Federal Truth in Lending Act.

On September 24, 1976, appellant (cross-appellee) Linda Callaway executed a promissory note with security agreement to appellee (cross-appellant) East Texas Government Credit Union (credit union) for the principal sum of $4,000 and a finance charge of $962.29. The proceeds of this note were used to purchase a 1975 Chevrolet Monte Carlo in which the credit union retained a security interest. Callaway had previously borrowed $5,289 from the credit union to buy a 1975 mobile home and had executed a note for that amount on September 25, 1975. The finance charge on that note totalled $3,837, and a security interest was also retained in the mobile home.

When this suit was originally filed on July 13, 1979, Callaway had defaulted on the car note in the amount $995 and on the mobile home note in the amount of $76.05. Suit was filed to recover the total principal balance due on the notes, plus accrued interest, attorney's fees and costs. The petition was for collection of the amount due only and did not include a pleading for foreclosure of any security interest which the credit union held in either piece of property.[1]

The attorney for the credit union filed an application and bond for issuance of a writ of sequestration at the time the original petition was filed. The application was supported by an affidavit made on July 10, three days before suit was filed, by Charles

1. The petition was amended on December 14, 1979, to include a pleading for foreclosure on the security interests.

Lodowski, manager of the credit union. Affiant therein stated that a suit had been commenced against Linda Callaway for possession of the Monte Carlo and the mobile home. The affidavit did not include a statement of specific facts which would indicate the necessity for a writ, e. g., reasons affiant feared the property would be injured or moved by Callaway during the pendency of the suit.

Linda Callaway has been represented by two attorneys during this lawsuit. Her first attorney filed a general denial to the credit union's petition on August 10, 1979. That attorney withdrew from the case on November 13, 1979, and Ms. Callaway retained present counsel who immediately filed a motion to dissolve the writ of sequestration against the property in question. A hearing was subsequently held and the writ was dissolved.

A counterclaim was then filed by Callaway against the credit union for wrongful issuance of a writ of sequestration under Tex.Rev.Civ.Stat.Ann. art. 6840 (article 6840). A claim for recoupment was also filed for violations of disclosure requirements under the Federal Truth in Lending Act which were allegedly committed by the credit union in both of the loans made to Callaway.

Trial was before the court. Judgment was entered for the credit union in its suit to collect on the two promissory notes. The court allowed Ms. Callaway's claim for recoupment for violations of the Truth in Lending Act, but denied recovery for wrongful issuance of the writ.

Article 6840, § 3(c) provides a statutory cause of action for damages for "wrongfully securing the issuance" of a writ of sequestration. Section 3(d) goes on to state,

> If the writ is dissolved and the personal property sought to be subjected to the writ is consumer goods, as that term is defined in the Texas Business and Commerce Code, the plaintiff or the party in possession shall be entitled to damages which shall be reasonable attorney's fees and the greatest of One Hundred Dollars ($100.00), the finance charge contracted for, or actual damages.

The statute also provides for a bona fide error defense to the above cause of action, however:

> No damages may be awarded for the failure of the plaintiff to prove by a preponderance of the evidence the specific facts alleged and such failure is the result of bona fide error. For a bona fide error to be available as a defense, the plaintiff must prove the use of reasonable procedures to avoid such error.

On a limited appeal, Ms. Callaway (hereinafter called appellant or cross-appellee) contends that she established a cause of action under article 6840 in the trial court; however, the trial court held that the credit union (hereinafter called appellee or cross-appellant) was entitled to the bona fide error defense. Appellant raises four points of error. Points 1 and 2 allege that there was no evidence or insufficient evidence to support the trial court's denial of relief for the wrongful issuance of the writ on the grounds of bona fide error. In her third and fourth points, appellant avers that there was no evidence or insufficient evidence to show that appellee had used "reasonable proceedings" to prevent its error.

Appellant alleges wrongful issuance of the writ based on the following facts. When appellee filed an application for a writ of sequestration, a hearing on the application was set for August 10, 1979. The petition, application for writ and notice of hearing were served on appellant. Without notice to appellant, an ex parte hearing was held on the application on August 8, 1979, and the writ was issued on that date. No answer had been filed by appellant by that date, and no motion for rehearing was filed thereafter. Appellant claims that neither she nor her attorney learned of the earlier hearing until August 10. The writ was sent to the sheriff on August 30, and appellant was informed that she would have to move out of the mobile home within seven days, which she did. The writ was not served at this time, however, because the sheriff had not yet received an indemnity bond. The sheriff returned later to serve the writ but

received a call not to do so by appellee's counsel because a settlement offer had been accepted from appellant's first counsel.

In its cross-point, appellee argues that the trial court erred in dissolving the writ because the writ had been returned unserved by the sheriff. Appellee maintains that it was unnecessary to dissolve the writ because no property was ever actually levied upon. It is argued alternatively that the writ was never "issued," [2] or had it been, no cause of action could lie under article 6840 unless an officer levied upon the property.

We hold that the writ of sequestration was "issued" in light of the definition attributed to that term by numerous Texas courts in cases comparable to the one now before us. In *Hufstedler v. Harral*, 54 S.W.2d 353, 355 (Tex.Civ.App.—Amarillo 1932, writ ref'd), a garnishment case, it was held that a writ was not issued "until actually or constructively placed in the hands of an officer for execution." Likewise, in cases involving service of process or execution of judgment, it has been determined that issuance occurs when a document is sent from the clerk's office to an officer "for the purpose of being served." *London v. Chandler*, 406 S.W.2d 203, 204 (Tex.1966); *Ferguson v. Estes & Alexander*, 214 S.W. 465, 467 (Tex.Civ.App.—El Paso 1919, no writ); see also *Walker-Smith Co. v. Coker*, 176 S.W.2d 1002, 1010 (Tex.Civ.App.—Eastland 1943, writ ref'd), and *Snell v. Knowles*, 87 S.W.2d 871, 876 (Tex.Civ.App.—Texarkana 1935, writ dism'd).

Article 6840, § 3(c), specifically provides an action for damages for "wrongfully securing the *issuance* of the writ." (Emphasis added). In this type of action, a complainant may recover the greatest of $100, the finance charge contracted for *or* actual damages. In light of the well-settled definition of "issuance" and of the alternate measures of damages offered by article 6840, we see no other possible interpretation than that a claimant might suffer no actual

damages yet still recover under the statute. The harsh conclusion is that a cause of action could exist in the present case even though appellant never lost possession of her property.

We agree that dissolution of the writ was necessary because of several fatal errors made in securing the issuance of the writ. Some of these errors were found by the trial court in its findings of fact:

(1) Prior to the issuance of the writ of sequestration, no order was entered by the court finding facts to support the statutory grounds for the writ of sequestration, valuing each article of personal property covered by the writ of sequestration, settling the amount of bond for the credit union or setting the amount of bond for Callaway to replevy;

(2) Credit Union failed to prove by a preponderance of the evidence that it was suing for possession of personal property at the time it applied for a writ.

(3) Credit Union failed to prove by a preponderance of the evidence that suit had been filed against Callaway on July 10, 1979, as alleged in the affidavit by Charles Lodowski used to support the application.

Also apparent on the face of the application is appellee's failure to state the specific facts upon which it relied to warrant the findings by the court as required by Tex.R. Civ.P. 696, e. g., reasons why applicant is afraid that possessor will injure or remove the property.

The trial court further found that errors (2) and (3) above were bona fide errors and that these errors occurred despite the use of reasonable procedures by the credit union to avoid such error. Accordingly, no liability on the part of the credit union was found for wrongfully securing the issuance of the writ. We disagree.

Several Texas statutes designed to protect consumers provide a defense of bona fide error to the violator, although some-

---

**2.** Appellant cites a case involving the sale of securities which defines "issuance" as delivery of a document which is "authoritative and binding." *Stokes v. Paschall*, 243 S.W. 611 (Tex.Civ.App.—Ft. Worth 1922, no writ).

times only in class actions. E. g., Tex.Rev. Civ.Stat.Ann. art. 5069–11.08 (Supp.1980–81) (Texas Debt Collection Practices Act); Tex.Ins.Code Ann. Art. 21.21, § 20 (Supp. 1980–81); Tex.Bus. & Comm.Code Ann. § 17.54[3] (Supp.1980–81) (Texas Deceptive Trade Practices Act.). Surprisingly, though, there is a dearth of Texas cases involving the bona fide error defense.

■■■ We believe the most appropriate definition of "bona fide error" appears in *Mirabel v. GMAC*, 537 F.2d 871, 878 (7th Cir. 1976), a Truth in Lending case: "A bona fide error is an error which is made in the course of a good faith attempt at compliance with statute requirements." When a statute expressly outlines the necessary procedures for obtaining a writ, it is our opinion that a good faith attempt to comply with that statute must be shown. Article 6840 and Rule 696 clearly specify the prerequisites for procuring a writ of sequestration; however, the application and affidavit filed in this case obviously did not conform to the statutory requirements. We cannot discern that any effort was made by appellee or its counsel to correct those defects prior to the issuance of the writ. Therefore, the trial court's findings that the errors made in securing the writ were bona fide were not supported by any evidence.

Furthermore, we find no evidence to support the trial court's findings that the credit union used reasonable procedures to avoid making such errors. Appellee contends that it must show only that the credit union utilizes, on a regular basis, reasonable procedures to prevent sequestering property in which it has no right to title and possession. We reject this contention.

■■■ Most of the above-cited statutes which allow a bona fide error defense are worded so as to require proof that reasonable procedures were used to avoid the *particular error in question*. See *Central Adjustment Bureau, Inc. v. Gonzales*, 528 S.W.2d 314, 316 (Tex.Civ.App.—San Antonio 1975, no writ); Bragg, "Now We're All Consumers! The 1975 Amendments to the Consumer Protection Act," 28 Baylor L.Rev. 1, 6 (1976). Likewise in the statute now before us, we think it clear that in order to utilize the bona fide error defense, appellee must show that reasonable procedures were used to prevent the error which caused the violation in question. Section 3(d) reads, "For a bona fide error to be available as a defense, the plaintiff must prove the use of reasonable procedures to avoid *such* error." (Emphasis added). In this case, "reasonable procedures" to avoid error in securing the issuance of the writ would have included filling out an application in compliance with the statutes and also procuring another supporting affidavit once a petition for foreclosure had been filed. In the absence of such a showing, appellee may not successfully assert the bona fide error defense.

■ Accordingly, we reverse and render the trial court's judgment precluding Linda Callaway from recovering damages under article 6840. Evidence showed that the finance charges contracted for under both notes equal $4,799.29. No actual damages were proven which would exceed the amount of the finance charges; therefore, under § 3(d) of article 6840, appellant is entitled to an offset in the amount of $4,799.29 against her debt to appellee in addition to reasonable attorney's fees which the trial court found to be $1,250 through trial and $750 for appeal to this court. There is no evidence to warrant an award of exemplary damages. See *Barfield v. Brogdon*, 560 S.W.2d 787 (Amarillo 1978, writ ref'd n. r. e.).

■■■ We now turn our attention to the credit union's cross-appeal. In cross-appellant's second point of error it is averred that the trial court erred in granting attorney's fees for work performed on the dissolution of the writ as there was no evidence presented to the court to allow such fees. This point may be summarily dismissed in light of our finding that the credit union is liable for wrongfully securing the issuance of the writ of sequestration under article 6840 which specifically provides for an award of attorney's fees.

**3.** This section was repealed, effective May 23, 1977, and replaced by § 17.50B of that Act.

Cross-appellant's first point of error states that the trial court erred in rendering judgment for cross-appellee on her claim for damages and attorney's fees for cross-appellant's violations of the Truth in Lending Act (Act) at 15 U.S.C.A. §§ 1640 et seq. There is no dispute that such violations did occur in both of the loan transactions between cross-appellant and cross-appellee. The issues to be decided are whether a counterclaim under the Act in a suit to collect on a note is in the nature of recoupment and if so, whether recoupment for the Truth in Lending violation would be barred by the Act's one year statute of limitation (15 U.S.C.A. § 1640(e) [4]).

Courts in numerous other jurisdictions have considered these questions and are diametrically opposed in their decisions. In many states the courts have allowed a counterclaim to survive the running of the statute of limitation. See, e. g., *Household Consumer Discount Co. v. Vespaziani*, 415 A.2d 689 (Pa.1980); *Household Finance Corp. v. Pugh*, 288 N.W.2d 701 (Minn.1980); *Household Finance Corp. v. Hobbs*, 387 A.2d 198 (Del.Super.1978); *Stephens v. Household Finance Corp.*, 566 P.2d 1163 (Okl. 1977); *Empire Finance Co. of Louisville, Inc. v. Ewing*, 558 S.W.2d 619 (Ky.1977). But see *Hodges v. Community Loan & Investment Corp.*, 133 Ga.App. 336, 210 S.E.2d 826 (1974) and *Ken-Lu Enterprises v. Neal*, 29 N.C.App. 78, 223 S.E.2d 831 (1977), cert. den'd., 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976).

Texas courts have on two occasions encountered the same fact situation as in the present case, and both have held that a defense of recoupment for violation of the Truth in Lending Act may be asserted in a suit to collect on a note even though the same claim asserted as an independent cause of action would be barred by limitation. *Brown v. U. S. Life Credit Corp.*, 602 S.W.2d 94, 96 (Ft. Worth 1980, no writ); *Garza v. Allied Finance Co.*, 566 S.W.2d 57, 63 (Corpus Christi 1978, no writ). We adopt

the reasoning in those decisions and hold that the trial court correctly allowed cross-appellee to assert her Truth in Lending claims as recoupment in defense to the credit union's suit on the notes. Therefore, her counterclaim is not barred to the extent it does not exceed the underlying loans. *Brown v. U. S. Life Credit Corp.*, supra.

Cross-appellant cites *Hennigan v. Heights Savings Assn.*, 576 S.W.2d 126, 130 (Houston [1st] 1978, writ ref'd n. r. e.) in support of its contention that cross-appellee's claim is barred by the limitation statute. The court in *Hennigan* reasoned that the statute of limitation would apply to a Truth in Lending claim since such is an independent cause of action and is not of an "intrinsically defensive nature." We disagree with this conclusion which is merely dictum, since the court found no evidence of any Truth in Lending violation in that case.

The judgment of the trial court for the credit union on the two notes totalled $7,233.99, plus interest at the rate of ten percent (10%) per annum on the principal amount from June 21, 1979, until paid. Attorney's fees of $600 were awarded to credit union, also. Offset against this amount in the trial court were damages of $2,000 due Callaway for the credit union's violation of the Truth in Lending Act, plus $1,350 attorney's fees. We affirm the judgment in this respect and additionally award appellant $750 attorney's fee for appeal of the claim for Truth in Lending violations to this court. Furthermore, we reverse and render the trial court's judgment denying relief to appellant for wrongful issuance of the writ of sequestration and order that the amount owed credit union on the notes be further offset in the amount of $4,799.25, plus total attorney's fees of $2,000.

Affirmed in part and reversed and rendered in part.

## ON MOTION FOR REHEARING

Appellant has filed a motion for rehearing in which she asserts that this court

---

**4.** The statute reads, "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

erred in failing to render judgment against credit union for the amount owed appellant on her counterclaim exceeding the net amount due credit union. She asks that we modify our judgment to allow affirmative recovery on appellant's counterclaim for such excess.

Relevant figures are as follows:

$7,233.99 – Principal amount demanded by credit union upon Notes

$ 705.56 – Interest at the rate of 10% per annum on principal amount of credit union's claim from June 21, 1979, until date of trial court's judgment on June 12, 1980

$ 600.00 – Attorney's fees awarded to credit union

$8,539.55 – Total demand by credit union on notes as of trial court's judgment date of June 12, 1980

–2,000.00 – Ms. Callaway's recoupment claim for damages under the Truth in Lending Act

–2,000.00 – Reasonable attorney's fees in conjunction with Truth in Lending claim

$4,539.55 – Net debt owed to credit union on its suit on two notes as of date of trial court's judgment June 12, 1980

Based on our judgment, Linda Callaway is also entitled to recover $4,799.25 in damages on her counterclaim for wrongful issuance of the writ of sequestration, in addition to attorney's fees totalling $2,350 as described in our original decision. Consequently, the total recovery of Ms. Callaway against credit union on her counterclaim for wrongful issuance of the writ of sequestration equals $7,149.25. When that sum is offset against the net debt of $4,539.55 owed to credit union on the notes, Ms. Callaway is entitled to to an affirmative recovery of $2,609.70, and we modify our original judgment to that effect.

Additionally, appellant is entitled to a provisional award of attorney's fees for appeal of her Truth-in-Lending claim and her counterclaim for wrongful issuance of the writ of sequestration to the Supreme Court in the amount of $500 and $500, respectively, and if writ is filed, an additional $500 and $250, respectively, if the writ is granted.

Our judgment is so modified.