ACCEPTED
14-15-00442-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
10/23/2015 4:36:09 PM
CHRISTOPHER PRINE
CLERK

No. 14-15-00442-CV

_____

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

10/23/2015 4:36:09 PM

CHRISTOPHER A. PRINE
Clerk

# In the
# Fourteenth Court of Appeals
# Houston, Texas

_____

CARRINGTON MORTGAGE SERVICES, LLC AND
DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS INDENTURE TRUSTEE FOR NEW CENTURY HOME
EQUITY LOAN TRUST 2005-2,

Appellants,

v.

LARRY HUTTO AND BONNIE HUTTO,

Appellees.

_____

On Appeal from the 55th Judicial District Court of
Harris County, Texas, Cause No. 2013-08693

_____

APPELLEES' BRIEF

_____

Robert "Chip" Lane
State Bar No. 24046263
Lane@lanelaw.com
Anh Thu N. Dinh
State Bar No. 24071480
Dinh@lanelaw.com
THE LANE LAW FIRM
6200 Savoy, Suite 1150
Houston, Texas 77036
[Tel.] (713) 595-8200
[Fax] (713) 595-8201
ATTORNEYS FOR APPELLEES

1

## IDENTITIES OF PARTIES AND COUNSEL

Appellants:

Carrington Mortgage Services, LLC and Deutsche Bank National Trust Company, as Indenture Trustee for New Century Home Equity Loan Trust 2005-2

Counsel for Appellants:

Peter C. Smart
Texas Bar No. 00784989
CRAIN, CATON & JAMES, P.C.
1401 McKinney St., Suite 1700
Houston, Texas 77010
[Tel.] (713) 658-2323
[Fax] (713) 658-1921

Appellees:

Larry Hutto and Bonnie Hutto

Counsel for Appellee:

Robert "Chip" Lane
State Bar No. 24046263
Anh Thu N. Dinh
State Bar No. 24071480
THE LANE LAW FIRM
6200 Savoy, Suite 1150
Houston, Texas 77036
[Tel.] (713) 595-8200
[Fax] (713) 595-8201

## TABLE OF CONTENTS

Identities of Parties and Counsel.................................................................................2

Statement Regarding Oral Argument .........................................................................5

Issues Presented ..........................................................................................................6

Statement of Facts.......................................................................................................7

Summary of Argument ..............................................................................................12

Standard of Review....................................................................................................13

Argument....................................................................................................................14

I.    PRELIMINARY STATEMENT ON THE SUPREME COURT'S REVIEW ...............................................................................................…14

II.    THE HUTTOS DO NOT HAVE CLAIMS FOR AFFIRMATIVE RELIEF.......................................................................................................14

III.    DEFENSES ARE NOT BARRED BY THE STATUTE OF LIMITATIONS................................................................................................15

IV.    BANK FAILED TO PERFORM ITS OBLIGATIONS IN THE SECURITY AGREEMENT BECAUSE IT DID NOT CURE ITS VIOLATION OF SECTION 50(a)(6)(Q)(ix)................................................17

V.    THE HUTTOS WERE NOT IN DEFAULT...............................................20

VI.    BANK WHOLLY FAILED TO RESPOND TO REQUESTS FOR DISCLOSURE AND THEREFORE, COULD NOT INTRODUCE EVIDENCE OF ITS DAMAGES………………………...….22

VII.    BANK IS NOT ENTITLED TO EQUITABLE SUBROGATION……….23

        i.    The Statute of Limitations Bars Claim for Equitable Subrogation………………………………………24

ii.    Equitable Subrogation is Inapplicable………………………25

iii.    Bank's Actions Do Not Favor Equitable Relief…………….26

Prayer ...................................................................................................27

Certificate of Compliance with Tex. R. App. P. 9..................................29

Certificate of Service ............................................................................29

**STATEMENT REGARDING ORAL ARGUMENT**

The issues presented may be resolved by reference to the Home Equity Security Agreement and well-established case law. Appellees Larry and Bonnie Hutto do not believe that oral argument is necessary for the court to decide this appeal. However, if the court grants Appellants' request for oral argument, the Huttos respectfully request the opportunity to participate.

Appellants' Issue 1 Restated: In an action where the homeowners have no affirmative claims for relief but are only defending against a foreclosure action, whether the homeowners' defense that the lender failed to perform its obligations under the Home Equity Security Agreement is barred by the statute of limitations?

Appellants' Issue 2 Restated: A bank seeking to foreclose to under a deed of trust must provide a proper notice of intent to accelerate the mortgage. Notice that the debt has been accelerated is ineffective unless preceded by a proper notice of intent to accelerate. Carrington and Deutsche Bank sent a default letter stating an unsubstantiated default amount that was not owed by the Huttos. Whether Appellants met their burden to show that a default occurred and that their default letter constitutes a proper notice of intent to accelerate that would entitle Appellants to foreclose?

Appellants' Issue 3 Restated: Whether Appellants are entitled to equitable subrogation where: (i) they did not make this claim until nine (9) years after the claim accrued; (ii) the home equity lien is not invalidated but remains on the property; and (iii) they failed to show that their actions favored equitable relief?

## A. Execution of the Home Equity Loan and Violation of Article XVI, § 50(a)(6)(Q)(ix) of the Texas Constitution

On January 20, 2005, Larry Hutto executed a Texas Home Equity Note in favor of New Century Mortgage for a refinance transaction of his homestead. (RR Vol. 3 – Bank Ex. A-1). Larry Hutto, his wife Bonnie Hutto (the "Huttos") and the lender simultaneously entered into a security agreement ("Deed of Trust") where the lender agreed to comply with certain obligations prior to foreclosure[1]. (RR Vol. 2 – Hutto Ex. 1).  The Deed of Trust states that before the lender can exercise its power of sale, it must comply with the obligations to the "full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution" or "correct any failure to comply [with the Texas Constitution]".  (RR Vol. 2 – Hutto Ex. 1, p. 12).

Although the lender is required to acknowledge the fair market value **on the day of closing** before it can secure a valid lien on the homestead, the lender in this case did not "acknowledge" the fair market value until four days later (RR Vol. 2 – Bank Ex. A-13).

## B. Assignment of the Note and Deed of Trust

The Note and Deed of Trust were subsequently assigned to Deutsche Bank National Trust Company, as Indenture Trustee for New Century Home Equity Loan Trust 2005-2 ("Deutsche"). (RR Vol. 3, Bank Ex. A-3). Carrington Mortgage

---

[1] Foreclosure would only occur in the event of a loan default.

Services, LLC ("Carrington") services the loan, the Note and the Deed of Trust. (RR Vol. 3, Bank Ex. A-34). Deutsche and Carrington are collectively referred to as "Bank."

## C. Repayment Plan That Made the Loan Current

Around April 2008, the Huttos modified their home equity loan to where the principal balance was increased by $10,000. (RR Vol. 2 – Hutto Ex. 7). After making payments for about three (3) years, the Huttos faced financial difficulty in mid- 2011 and sought a repayment plan from Bank to bring their loan current. On June 24, 2011, Melina Vasquez, Bank's loan modification officer, notified the Huttos that "the director" approved them for a 6- months payment plan (the "Plan"), starting July 15, 2011. (RR Vol. 2 – Hutto Ex. 9). Under the 6- months plan, monthly payments were approximately more than four times their regular monthly payment. (RR Vol. 2 – Hutto Ex. 9-10).

The Huttos submitted nearly $16,000 in accordance with the Plan from August 2011 through January 2012. (RR Vol. 2 – Hutto Ex. 10). In November 2011 (while the Huttos were continuing to pay under the repayment schedule), Bank provided the Huttos with a "Repayment Plan Agreement" that specified "Borrower agrees to the terms of this Agreement *in order to bring the account current*…". (RR Vol. 2 – Hutto Ex. 13). (emphasis).

After the Huttos completed *all* of their payments under the plan, Bank notified them on June 26, 2012 that "[y]our **loan is current now** and not due until 2-1-12. I will be requesting it moved out of foreclosure." (RR Vol. 2 – Hutto Ex. 14) (emphasis). That email also stated that their first payment per month would now be $785.43. (RR Vol. 2 – Hutto Ex. 14). Bank directed the Huttos to believe that once they submitted nearly $16,000 is payments under the Plan, their loan was current and they would resume payments of $785.43 per month.

To the Huttos' dismay, when they received their February 2012 mortgage statement, it showed that they owed not only $785 for the mortgage payment, but there was an inexplicable past due amount of $1,751.06, which consisted of unsubstantiated items and fees. (RR Vol. 2 – Hutto Ex. 15). The Huttos submitted their mortgage payment of $785, but not for the unaccountable fees. (RR Vol. 1 – pgs. 48-51).

The Huttos attempted to contact Bank to question the unsubstantiated fees but did not receive an explanation. (RR Vol. 1 – pgs. 48-50). The mortgage statement that the Huttos received in March grew to $3,000.71, and the April statement grew to $5,553.89 (RR Vol. 2 – Hutto Ex. 15).

On May 7, 2012, they received a Notice of Intent to Foreclose from Bank stating that they were in default on one month's payment, yet the amount required to cure the default was $4,277.30. (RR Vol. 2 – Hutto Ex. 16).

The Huttos did not believe they owed this amount, especially where Bank provided no explanation for the excess fees and why they were tacked on to the Huttos' account after they were notified that their loan was current. (RR Vol. 2, Ex. 14). At trial, Bank failed to substantiate the fees that were being charged on the Huttos' "current" loan. (RR Vol. 1, pgs. 50-57).

### D. Bank Proceeds With Foreclosure

On August 24, 2012, Bank filed an Application for Foreclosure of the Huttos' homestead and alleged that they were allegedly in default for five (5) months in the amount of $14,669.90. (RR Vol. 2 – Hutto Ex. 17, pg. 3). Pursuant to TEX. R. CIV. P. 736, this Court dismissed the foreclosure application after the Huttos filed a separate lawsuit challenging Bank's attempt to foreclose.

### E. Notice to Cure Violations of the Texas Constitution

On October 31, 2012, the Huttos sent to Bank a "Notice to Cure" letter, detailing its Section 50(a)(6) violations, and giving it the statutorily-required 60 days to "cure." (RR Vol. 2 – Hutto Ex. 2). 60 days passed, but Bank never cured nor responded to these violations.

### F. Bank Files Counterclaim for Foreclosure and the Huttos Non-Suit Their Claims

On February 4, 2014, Bank filed its counterclaims for foreclosure and equitable subrogation. (CR Vol. pgs. 252-256), despite not having performed its obligations under the deed of trust. The Huttos non-suited their affirmative claims

on September 16, 2014, leaving Bank's counterclaims as the only claims in the lawsuit. (CR Vol. 1, p. 718).

## G.  Summary Judgment

Bank filed various motions for summary judgment contending that the Huttos' defenses against Bank's foreclosure were barred by the statute of limitations. (CR Vol. 1, pgs. 486-664) (CR Vol. 3, 1277-1375) (CR Vol. 3, pgs. 1385-1389). The Huttos responded that they were not seeking affirmative relief nor forfeiture of the loan. Rather, they were *defending* against Bank's action to *force a sale* of their homestead. (CR Vol. 2, pgs. 1096-1106). The Huttos argued that, pursuant to the Deed of Trust, Bank had not met its burden to prove that it performed its contractual obligations that would entitle it to exercise the power of sale. (CR Vol. 2, pgs. 1096-1106). Bank failed to perform its obligations stated within paragraph 19 of the security agreement because it did not "cure" its violation of TEX. CONST. art. XVI §50(a)(6)(Q)(ix) within 60 days of the Huttos' notice to cure. (CR Vol. 2, pgs. 1096-1106). The Huttos argued that defenses to the enforcement of a contract are not barred by the statute of limitations, **and** that they were not in default for the amounts that Bank alleged they owed. The trial court denied the Bank's summary judgment motions. (CR VOL. 3, p. 1384).

11

## SUMMARY OF ARGUMENT

This appeal concerns the Bank's attempt to force sale of a homestead and enforce a home equity security agreement subject to Article XVI, Section 50 of the Texas Constitution. The crux of Appellants' brief is focused on the validity versus invalidity of the home equity lien. However, Appellants' analysis is misplaced because the trial court did not find that the lien was invalid, nor was that argument made by the Huttos. (RR Vol. 1, pgs. 69-70). The Huttos do not have any claims or arguments to invalidate the home equity lien. The Huttos do not have claims for affirmative relief, but are only defending the forced sale of their homestead. This distinction was emphasized by the trial court because affirmative claims may have invalidated the Note and lien. (CR Vol. 3, p. 1394). In this case, however, Bank retains its lien but cannot foreclose. As such, the statute of limitations does not apply to preclude the Huttos' defenses in protecting the forced sale of their homestead where Bank failed to cure its TEX. CONST. Section 50(a)(6)(Q)(ix) violation.

Bank's obligation to "cure" any constitutional defect is a specific requirement in the Deed of Trust. Although the Huttos notified Bank of its constitutional violation, Bank ignored its requirement to cure the defect and moved forward with its attempt to foreclose. Because Bank failed to perform its obligation in the Deed of Trust, it cannot enforce the power of sale.

12

A bank seeking to foreclose under a deed of trust must provide a proper notice of intent to accelerate the mortgage because the notice provides the debtor with an opportunity to cure his default prior to acceleration and foreclosure. Notice that the debt has been accelerated is ineffective unless preceded by *proper* notice of intent to accelerate.

The default notice in this case was incorrect and insufficient to satisfy a proper notice to of intent to accelerate because it suggested that the Huttos must pay $4,277.30 within 30 days to "cure" the default. However, the Huttos did not owe this amount. There was no opportunity to "cure" the default when the default amount is incorrect. Therefore, the trial court correct decided that the Bank failed to show that the Huttos were in default and failed to establish that a proper notice of intent to accelerate was provided to the Huttos.

Bank cannot prevail on its counterclaim for equitable subrogation because this claim is barred by the applicable limitations period. Moreover, the Huttos are not seeking a declaration that Bank's lien is void, so equitable subrogation is inapplicable to this case.

## STANDARD OF REVIEW

Findings of fact are reviewable for legal and factual sufficiency under the same standards applied when reviewing the evidence supporting a jury answer. Santa Fe Petroleum, L.L.C. v. Star Canyon Corp., 156 S.W.3d 630, 636 (Tex. App.

13

–Tyler 2004, no pet.). An appellate court reviews de novo a trial court's conclusions of law. *Id*. A conclusion of law is set aside if it is erroneous as a matter of law. *Id*.

**ARGUMENT**

## I. <u>PRELIMARY STATEMENT ON THE SUPREME COURT'S REVIEW</u>

The crux of Bank's argument is that its lien was voidable and automatically became valid after the passage of four (4) years from the time the home equity loan closed. On October 9, 2015, the Texas Supreme Court granted the homeowners' petition or review on this issue. *Alice M. Wood and Daniel L. Wood v. HSBC Bank USA, N.A. and Ocwen Loan Servicing, L.L.C*.; from Fort Bend county; 14th court of Appeals District (14-13-00389-CV, 439 S.W.3d 585, 07-13-14).

In that case, the homeowners are seeking to have the lien *declared void* and to *recover* the principal and interest. The issue is whether a homestead lien that violates § 50(a)(6) of the Texas Constitution is void ab initio, but subject to a lender's right to invalidate the lien by cure, or voidable, and thus valid upon closing unless set aside in a timely suit. Oral argument is set for December 8, 2015.

Although the facts of that case and this present case are somewhat similar, the procedural posture is different for the reasons stated below.

## II. <u>THE HUTTOS DO NOT HAVE CLAIMS FOR AFFIRMATIVE RELIEF</u>

14

In this case, the Huttos are *not seeking affirmative relief*. They are not seeking to have the lien declared void, they are not seeking for reimbursement of payments that were made in the past, and they are not seeking to have principal and interest forfeited. (RR Vol. 1, pgs. 29-30). They do not have any claims to invalidate Bank's homestead lien. The only claim that remained at trial was Bank's claim to foreclose. The issue was whether Bank met its burden to prove that it performed its contractual obligations that would entitle it to foreclose on the Huttos' homestead. The Huttos are simply *defending* against Bank's action to *force a sale* of their homestead because §50(a) states that "[t]he homestead of a family…*shall be*, and is hereby *protected from forced sale*, for the payment of all debts *except for*…an extension of credit that [complies with every provision of TEX. CONST. art. XVI, §50(a)(6)]." The trial court did not grant any affirmative relief to the Huttos. (RR Vol. 1, p. 69).

### III.  DEFENSES ARE NOT BARRED BY STATUTE OF LIMITATIONS

Courts throughout Texas, including the First Court of Appeals, have found that defenses to the enforcement of a contract are not barred by the statute of limitations. *See Hennigan v. Heights Sav. Ass'n*, 576 S.W.2d 126, 130 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *Villages of Greenbriar v. Torres*, 874 S.W.2d 259 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see also Morris-Buick Co. v. Davis*, 91 S.W.2d 313, 314 (Tex. 1936) ("if the subject matter

15

of the defense be of an intrinsical nature which might operate merely in rebuttal of [the claimant's] right to recover, or in abatement of the amount claimed, the statute of limitation does not apply") (emphasis) (cited by *Southern Pacific Co. v. Porter*, 331 S.W.2d 42 (Tex. 1960)); *see First Bank of Roxton v. Shankles*, 2013 Bankr. LEXIS 3992 (Bankr. E.D. Tex. Sept. 23, 2013) ("The Court concludes that the **statute of limitations upon which the bank relies does not bar the debtor or trustee from challenging the bank's claim or lien. [A] statute of limitations generally does not bar a defendant from asserting an intrinsically defensive claim which, if successful, will operate as an abatement**...the debtor and the trustee are not seeking an affirmative recovery from the bank. Their counterclaims are **defensive in nature**. They are **seeking to prevent the bank from foreclosing on the debtor's home**.") (emphasis added).

A claimant cannot file a lawsuit and then claim that the defendant is barred by limitations from asserting its affirmative defenses such as fraud, mistake, or waiver. *See, e.g. Cooper v. Republic Bank Garland*, 696 S.W.2d 629, 634 (Tex. App.—Dallas 1985, no writ) (preventing plaintiffs from using limitations offensively to negate defendants' defense arising out of a contract claim; "[debtors] sued because the bank had demanded that they fulfill the terms of the contract or face foreclosure… limitation does not bar the Coopers from asserting defenses

16

arising out of the sale that may entitle them to an offset against, or cancellation of, the remaining balance.").

Here, Bank cannot sue to foreclose on the Huttos' homestead, yet use the statute of limitations offensively to prevent the Huttos from asserting their defenses related to Bank's violations of the Texas Constitution.

The following discussion from American Jurisprudence, Second Edition, is instructive as to the inapplicability of the statute of limitations to defenses:

> Statutes of limitation should be used only as a shield and not as a sword, and courts ordinarily allow defendants to raise defenses which, if raised as claims, would be time-barred. Thus, as a general rule, statutes of limitation are not applicable to, or do not run against, defenses.
>
> A statute of limitations does not bar a pure defense, or a defense involving no claim for affirmative relief, or a defense which, if given effect . . . would negate the plaintiff's right to recover… Statutes of limitation also do not run against defenses arising out of the transaction sued upon, and so long as the courts will hear a plaintiff's case, time will not bar a defense if the cause of action and the asserted defense are closely and logically related in a sort of legal affinity.
>
> 51 m. Jur. 2d *Limitation of Actions* § 98 (2011).

**IV.  BANK FAILED TO PERFORM ITS OBLIGATIONS IN THE SECURITY AGREEMENT BECAUSE IT DID NOT CURE ITS VIOLATION OF SECTION 50(a)(6)(Q)(ix)**

The trial court properly found that Bank failed to perform its contractual obligations because Bank failed to cure Section 50(a)(6)(Q)(ix), which is a

17

condition precedent to enforcement of the contract.

Bank seeks to declare that the Huttos were in default pursuant to paragraph 21 of the deed of trust. (CR Vol. 1, pgs. 669-670). As such, it seeks to enforce the "power of sale" clause in paragraph 22 of the deed of trust. (RR Vol. 2, Ex. 1). However, for Bank to prevail, it had to show that it performed its own obligations under the contract. *Williams v. Coulam*, 2010 Tex. App. LEXIS 4813 (TEX. App. Houston [1st Dist.] June. 24, 2010) ("to prevail on his breach of contract claim, therefore, Williams must establish that (1) a valid agreement exists; (2) **he performed under the Agreement**…"); *see Astrodome United States v. Dur United Entm't*, 1999 U.S. App. LEXIS 41027 (5th Cir. 1999) (specific element at issue was whether the plaintiff proved that it performed/tendered performance). However, Bank failed to comply with paragraph 19 of the deed of trust because it failed to *cure* its violation of TEX. CONST. art. XVI, §50(a)(6)(Q)(ix).

> Paragraph 19 states:
>
> It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.
>
> As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14 [notice to cure violations], and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required…**only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by**

18

**Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit**.

(RR Vol. 2, Ex. 1). (emphasis added).

TEX. CONST. art. XVI, §50(a)(6)(Q)(ix) states that before a lender can have a valid lien against a borrower's homestead, the owner and the lender **must** sign a written acknowledgement of fair market value **on the date the extension of credit is made**. The acknowledgement of fair market value which the Huttos received at closing was not acknowledged by the lender. (RR Vol. 2, Ex. 5). Three months prior to the commencement of this lawsuit, the Huttos notified Bank of the aforementioned violation, but Bank never cured. (RR Vol. 2, Ex. 2). At trial, Bank produced an "Affidavit of Fair Market Value" that *actually proved its* non-compliance with §50(a)(6)(Q)(ix) because it shows that Bank did not execute the acknowledgement of fair market value until 4 days after closing. (RR Vol. 3, Ex. A-13); (RR Vol. 1, pgs. 39-40).

Bank does not suggest that it cured §50(a)(6)(Q)(ix) nor took any corrective action pursuant to the terms of paragraph 19 of the agreement. It did not even attempt to show that no such violation occurred. Without complying with its obligations in the deed of trust, Bank cannot enforce the power of sale in the deed of trust. (RR Vol. 2, Ex. 1, pgs. 11-14). The trial court correctly ruled that Bank failed to establish that it performed all of its obligations under the security

19

agreement. (CR Vol. 3, pgs. 1408-1409). As such, it is not entitled to foreclosure.

## V. <u>THE HUTTOS WERE NOT IN DEFAULT</u>

The trial court also correctly ruled that Bank is not entitled to foreclose because it failed to provide the Huttos with an accurate amount needed to cure their alleged default and failed to prove that they were in actually in default as of May 7, 2012. (CR Vol. 3, pgs. 1393-1394).

A bank seeking to foreclose under a deed of trust must provide a proper notice of intent to accelerate the mortgage. *Ogden v. Gibrartar Savings Ass'n.*, 640 S.W.2d 232 (Tex. 1982). Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default prior to harsh consequences of acceleration and foreclosure. *Id.* at 234. Notice that the debt has been accelerated is ineffective unless preceded by *proper* notice of intent to accelerate. *Id.* (citing *Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863 (Tex. 1975)) (emphasis).

The default notice in this case was incorrect and insufficient to satisfy a proper notice to of intent to accelerate because it suggested that the Huttos must pay $4,277.30 within 30 days to "cure" the default. (RR Vol. 3, Ex. A-5). If this amount was not cured timely, then their loan would be accelerated. (RR Vol. 3, Ex. A-5). Acceleration of the loan cuts off the debtor's right to cure his default and the entire debt is then due and payable. *Gibrartar*, at 234. As such, the correct default amount must be identified to constitute a proper notice of intent to accelerate.

20

From August 2011 to January 2012, the Huttos were submitting full payments under a Repayment Plan that Carrington led them to believe would bring their loan current. (RR Vol. 2, Exs. 10-11). Although their regular monthly payments were only $538.85 under the existing loan agreement, they were making monthly payments of almost $2,700 under the Repayment Plan to bring their loan current. (RR Vol. 2, Exs. 9-13). Bank represented to the Huttos that once they completed their payments under the Plan, their loan would be current and monthly payments thereafter would be $785 per month. (RR Vol. 2, Exs. 9-13). After the Huttos submitted all of their payments under the Plan, they received confirmation from Carrington that their "loan is current" and that their account would be removed from foreclosure. (RR Vol. 2, Ex. 14). As of February 2012, their monthly payments were only supposed to be $785.

Bank offered **no evidence** at trial to explain *why* or *how* the Huttos were in default for $4,277.30 when their monthly payments were only $785. (RR Vol. 1, p. 56). It gave no explanation for the miscellaneous fees that were being charged to the Huttos' account. (RR Vol. 1, p. 57). There was never an agreement for the Huttos to be responsible for miscellaneous fees after the Repayment Plan was complete. Bank's foreclosure attempt after representing to the homeowners that their loan was "current" and having received $16,000 over 6 months is nothing short of deception. Ms. Hutto testified at trial that she contacted Bank numerous

21

times but did not receive an explanation for why her account was being charged for unsubstantiated amounts. (RR Vol. 1, pgs. 50-57). More importantly, the default letter dated May 2012 was not a sufficient notice of intent to accelerate because it did not properly how much needed to be cured. (RR Vol. 2, Ex. 16). The trial court agreed that the Bank's deceptive conduct constitutes poor business practice and that the Huttos did not owe any past due amounts nor unpaid late charges. (RR Vol. 1, pgs. 77-78).

The Court correctly concluded that the Huttos were not in default, and did not receive a sufficient notice of default. (CR Vol. 3, pgs. 1393-1394). Without a proper notice of default, Bank is not entitled to foreclose.

Bank's suggestion that the "amount due is even less important" because Bank is seeking to foreclose on a home equity loan is flawed. If Bank forecloses, it can only recover the correct amount that is owed on the property. If there is a surplus, then that amount must be reimbursed to the homeowner. TEX. PROP. CODE §51.003(c). If there is a deficiency, then the bank cannot recover anything more from the owner because of this loan's non-recourse status. Therefore, the correct amount owed determines how much a bank can recover in the event of a foreclosure.

## VI. BANK WHOLLY FAILED TO RESPOND TO REQUESTS FOR DISCLOSURE AND, THEREFORE, COULD NOT INTRODUCE EVIDENCE OF ITS DAMAGES

22

The Huttos sent Requests for Disclosures to Bank on February 13, 2013 asking for the amount and any method of calculating economic damages pursuant to Tex. R. Civ. 194.2(d). (RR Vol. 2, Ex. 4). At the time of trial on January 27, 2015, Bank had not responded to the Huttos' requests and had not provided the method of calculation for the alleged default amount. (RR Vol. 1, pgs. 8-10). Therefore, Bank should have been barred from introducing any evidence of damages on its foreclosure and equitable subrogation.

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911 (Tex. 1992); *Mears v. Harris Park, Inc*., 2001 Tex. App. LEXIS 2427 (Tex. App. – Houston [14th Dist.]).

Bank did not produce any method of calculating damages nor testimony that formed the basis of its foreclosure claim or its claim that it is entitled to equitable subrogation for $68,174.94 (CR Vol. 1, pgs. 670). As such, it should have been precluded from introducing any evidence of damages on these issues.

**VII.  BANK IS NOT ENTITLED TO EQUITABLE SUBROGATION**

The trial court properly denied Bank's equitable subrogation claim because (i) this claim is barred by the residual statute of limitations and (ii) the Huttos are

23

not asking that the lien be voided in this case; therefore, equitable subrogation is inapplicable.

i. The Statute of Limitations Bars Claim for Equitable Subrogation

"Every action for which there is no express limitations period…must be brought not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE §16.051. To the extent it is a suit for the recovery of real property under the real property lien, it is governed by the four-year statute of limitations. TEX. CIV. PRAC. & REM. CODE §16.035(a). A cause of action accrues at the time *facts* come into existence that authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc*., 800 S.W.2d 826, 828 (Tex. 1990) (stating that the statute of limitations applies to equitable subrogation)(citing *Guillot v. Hix*, 838 S.W.2d 230, 232 (Tex. 1992)). Regardless of whether §16.035 or §16.051 applies, the four-year limitations period governs Bank's claim for equitable subrogation. *See Brown v. Zimmerman*, 160 S.W.3d 695, 701 (Tex. App. 2005) (applying the four-year limitations period to the noteholder's claim for equitable subrogation).

There is no dispute that Bank's basis for their equitable subrogation claim is based on the lender's alleged payment to a prior lienholder in 2005, at the time this home equity loan closed. (CR Vol. 1, p. 670). Thus, the cause of action accrued in 2005, but Bank did not file its claim for equitable subrogation until July 29, 2014,

nearly nine (9) years later. As such, its claim for equitable subrogation is time-barred. (RR Vol. 1, p. 35).

### ii. Equitable Subrogation is Inapplicable

Equitable subrogation is additionally inapplicable in this case because the Huttos are not seeking a declaration that the lien is invalid nor forfeiture of the loan.

Equitable subrogation is "legal fiction" that allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing. *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co*., 236 S.W.3d 765, 774 (Tex. 2007); *see also Murray v. Cadle Co.*, 257 S.W.3d 291, 299 (Tex. App.-Dallas 2008, pet. denied). Equitable subrogation has only been applied to home equity loans where the Court *invalidated* the lien and ordered forfeiture of the loan. *See LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616 (Tex. 2007). In those cases, the Court found that the "forfeiture" of principal and interest did not preclude the lender's recovery of the refinance portion of the loan *after* it was ordered that the loan was invalid.

Here, the Huttos are not asking that lien be declared void, or that Bank forfeit principal and interest under the lien. Simply put, the Huttos are only defending against Bank's claim to *force sale* of their home. If the Huttos prevail, Bank retains its lien, but it is merely barred from foreclosure because it has not

satisfied its burden under §50(a) of the Texas Constitution. (RR Vol. 1, p. 27). Equitable subrogation does not apply where the lender retains its lien.

### iii.   Bank's Actions Do Not Favor Equitable Relief

Moreover, the trial court correctly denied Bank's equitable subrogation claim because Bank failed to show that its actions favor equitable relief.

A party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that *favors equitable relief*. *Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd*., 259 S.W.3d 140, 142 (Tex. 2008). The court must balance the equities in view of the totality of circumstances to determine whether a party is entitled to equitable subrogation. *Murray v. Cadle Co*., 257 S.W.3d 291, 300 (Tex. App.—Dallas 2008, pet. denied). One of the factors that a court may consider in this balancing test include the negligence of the party claiming subrogation. *Id*. the purpose of equitable subrogation is "to prevent the unjust enrichment of the *debtor* who the debt that is paid." *First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 415 (Tex. 1993). (emphasis).

Here, Bank failed to show that the circumstances in its case favor equitable relief. (CR Vol. 3, p. 1395). It failed to prove that it was a "good player" that deserves the equitable right to repayment. (RR Vol. 1, pgs. 34-35). It failed to establish that the Huttos would be unjustly enriched if equitable subrogation is not

allowed. As stated above, the lien on the Huttos' homestead is not extinguished. The trial court did not rule that Bank's lien goes away. Therefore, Bank's lien remains the only debt and there is nothing it is "equitably subrogated" to.

Because the Huttos are not asking for the lien to be invalidated, nor are they seeking forfeiture of the loan, Bank's claim for equitable subrogation fails.

## PRAYER

For these reasons stated above, the trial court correctly denied Bank's request to foreclose because (a) the Huttos' defenses against foreclosure are not barred by the statute of limitations; and (b) Bank failed to establish that the Huttos were in default and failed to provide a proper notice of intent to accelerate. Bank's equitable subrogation claim was also correctly denied because (a) it is barred by the statute of limitations; (b) Bank's lien is not extinguished; and (c) Bank failed to show that its actions favor equitable relief. For these reasons, this Court should overrule Bank's issues on appeal and affirm the judgment of the trial court.

Respectfully submitted,

/s/ *Anh Thu N. Dinh*
Robert "Chip" Lane
State Bar No. 24046263
Lane@lanelaw.com
Anh Thu N. Dinh
State Bar No. 24071480
Dinh@lanelaw.com
THE LANE LAW FIRM
6200 Savoy, Suite 1150
Houston, Texas 77036

27

[Tel.] (713) 595-8200
[Fax] (713) 595-8201
ATTORNEYS FOR APPELLEES
LARRY AND BONNIE HUTTO

**CERTIFICATE OF COMPLIANCE**

As required by Rule 9 of the Texas Rules of Appellate Procedure, I certify that this brief contains 5,062 words.


/s/ *Anh Thu N. Dinh*
Anh Thu N. Dinh



**CERTIFICATE OF SERVICE**

I hereby certify that I have served this document on all parties listed below on this 23rd day of October 2015 by United States First mail, or by electronic service where allowed:

Peter C. Smart
psmart@craincaton.com
Crain, Caton & James, P.C.
1401 McKinney St., Suite 1700
Houston, Texas 77010
(713) 658-2323 (Telephone)
(713) 658-1921 (Facsimile)

*Attorney for Appellants*


/s/ *Anh Thu N. Dinh*
Anh Thu N. Dinh